T.C. Memo. 1998-148

UNITED STATES TAX COURT

WILLIAM RAY SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20916-95.                    Filed April 23, 1998.

William Ray Smith, pro se.

<u>Kathey Shaw</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined deficiencies in, and
additions to tax on, petitioner's Federal income tax for the
taxable years 1992, 1993, and 1994 as follows:

|  |  | Additions to Tax |
| Year | Deficiency | Sec. 6651(a)(1) |
| 1992 | $4,073 | $1,018 |
| 1993 | 4,219 | 1,054 |
| 1994 | 4,368 | 1,092 |

After concessions by the parties, the issues for decision are: (1) Whether, for income tax purposes, petitioner, who specifically bargained to be paid in American Eagle gold coins (the gold coins) for timber he sold during the taxable years in issue must report his income at the coins' face value or at their higher fair market value. We hold petitioner must report the coins at their fair market value, to the extent set out below. (2) Whether petitioner is liable for additions to tax under section 6651(a)(1)[1] for failure to timely file Federal income tax returns for 1992, 1993, and 1994. We hold he is, to the extent set out below.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are

---

[1]    All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]    Although in written documents filed with the Court petitioner raised various arguments, such as that the income tax is really an excise tax and does not apply to him, that he is a citizen of Oregon and not of the United States, that he is not subject to "maritime jurisdiction", that the OMB number on Form 1040 is incorrect, and similar irrelevant or erroneous contentions, he renounced those arguments after having been warned by the Court that he was putting himself in jeopardy of a penalty under sec. 6673. We do not consider those contentions worthy of further discussion, nor will we dignify petitioner's arguments by addressing them one by one. See Crain v. Commissioner, 737 F.2d 1417 (5th Cir. 1984); see also Sherwood v. Commissioner, T.C. Memo. 1997-26; Barcroft v. Commissioner, T.C. Memo. 1997-5.

incorporated into our findings by this reference.  At the time the petition in this case was filed, petitioner resided in Days Creek, Oregon.

On August 25, 1995, petitioner signed Forms 1040 for 1992, 1993, and 1994, reporting taxable income of zero for each of the taxable years in issue.

Petitioner, a timber worker displaced by the spotted owl controversy, lives with his wife and daughter more than 20 miles from the nearest town, on property he and his wife bought in the 1960's.  Petitioner and his family live very simply.  They use a gravity-driven water-powered generator for electricity, burn wood which they gather themselves for cooking and heat, and grow their own vegetables.  Petitioner and his wife drive an old car and occasionally use their pickup truck (the truck).  Generally, petitioner does not keep the truck insured because he uses it only to transport wood on his property.  When petitioner takes the truck on the highway, he telephones the insurance company 1 or 2 days before his anticipated trip, they put insurance on the truck, and petitioner is charged a set rate for each day of coverage.  From June 24, 1991, to the present, petitioner has paid approximately $39 per month in automobile insurance. Petitioner has no telephone, no mortgage, and no utility bills. Petitioner's daughter, who was 11 years old at the time of trial, is home schooled through the Christian Liberty Academy, and her only educational expenses are textbooks, which cost petitioner

approximately $250 per year. Petitioner's family living expenses during the years in issue were approximately $6,300 per year, which included property taxes of $1,272, $1,034, and $874 for 1992, 1993, and 1994, respectively, as well as the cost of food, clothing, oil and fuel for lights and transportation, and other miscellaneous expenses.

Petitioner wishes to live on the gold standard and calculates his living expenses and income on the basis of the American Eagle gold coin. A 1-ounce American Eagle gold coin has a face value of $50 and is legal tender at its $50 face value amount.[3] However, the coin's fair market value greatly exceeds the $50 legal tender amount and will fluctuate with the price of gold. Occasionally, petitioner is forced to use ordinary currency, as in dealing with merchants in town, paying property taxes, and ordering his daughter's textbooks. On such occasions, petitioner converts the gold coins into Federal reserve notes and pays with cash or a money order.

Before the years in issue, petitioner purchased some gold-mining claims and does mining on his own. In 1993 and 1994, petitioner earned a living by selling timber from the mining land which he cut and sold to C&D Lumber Co. in Riddle, Oregon (C&D). Petitioner insisted that he be paid in gold coins with a $50 face

---

[3] Petitioner conceded that at the time of trial the gold price in Federal Reserve notes was approximately $350 per ounce and that one American Eagle gold coin with a face value of $50 weighs 1 ounce.

value, rather than in Federal Reserve notes. To accommodate petitioner and to facilitate the sale, C&D contacted Gerald Merfeld (Merfeld), the owner of Alexander Coin Shop (the coin shop) to buy gold coins. For each transaction, C&D calculated the volume and dollar value of the timber that petitioner wanted to sell, ordered and purchased the gold coins from the coin shop in an equivalent amount based on the New York Commodity Exchange price of gold, and delivered the gold coins to petitioner in exchange for his timber. No other customers required C&D to pay for timber in gold coins, and the only business C&D did with the coin shop was with respect to the transactions engaged in for petitioner.

On March 3, 1993, C&D received $1,770 worth of logs from petitioner and, in exchange, paid petitioner five gold coins. On March 29, 1993, C&D received $1,050.45 worth of logs from petitioner and, in exchange, paid petitioner three gold coins. On April 6, 1993, C&D received $1,626 worth of logs from petitioner and, in exchange, paid petitioner three gold coins. On May 6, 1993, C&D received $13,365 worth of logs from petitioner and, in exchange, paid petitioner 36 gold coins. For 1993, petitioner incurred $300 in expenses for the hauling of logs from his property to C&D. In 1994, petitioner sold $1,635 worth of logs to C&D in exchange for gold coins.[4]

---

[4] The record does not indicate the number of gold coins petitioner received in this transaction.

Before the years in issue, petitioner earned approximately $700 per month from gold mining. During the years in issue, however, petitioner did not earn any income from mining.[5] During the years in issue, petitioner earned no more than $140 a year, apart from timber sales, which he received from Merfeld for refining gold for the coin shop.

OPINION

Issue 1. Value of American Eagle Gold Coins

It is well settled that the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Durando v. United States, 70 F.3d 548, 550 (9th Cir. 1995).

At trial, petitioner acknowledged that he insisted on being paid in gold coins for the timber he sold to C&D. Furthermore, petitioner conceded that he received the form of payment he requested.[6] Petitioner asserts, however, that for Federal income

---

[5] We accept petitioner's testimony that his mining activity did not produce income during the years in issue. It consisted of felling trees, digging, and testing the quality of the mine's output. In years after the ones in issue, petitioner conceded that he made money and supported his family from mining.

[6] Although petitioner believed that he received 41 gold coins in 1993, the evidence shows that he actually received 47. For 1994, the record does not indicate how many gold coins petitioner received in exchange for $1,635 worth of timber sold to C&D. However, at trial, petitioner conceded that the gold price in Federal reserve notes is approximately $350 an ounce. Accordingly, we find that in 1994, petitioner received somewhere between four and five gold coins in exchange for $1,635 worth of
(continued...)

tax purposes, the gold coins he received should be valued at their legal tender face value amount of $50. Respondent argues that the gold coins received by petitioner have a fair market value far in excess of their face value. Thus, respondent contends that for purposes of determining the amount realized from the sale pursuant to section 1001, the coins received must be classified as "property" rather than "money". For the reasons discussed below, we agree with respondent.

Section 1001(b) provides that the amount realized from the sale of property "shall be the sum of any money received plus the fair market value of the property (other than money) received." The first issue we must decide is whether the coins received by petitioner from sale of timber to C&D are classified as "money" or "property (other than money)" within the meaning of section 1001(b). If the coins are money, then their face value determines petitioner's income from the sale of timber; however, if the coins are property, then their fair market value is used.

Coins which are not currently circulating legal tender are property to be valued at their fair market value for purposes of section 1001(b). California Fed. Life Ins. Co. v. Commissioner, 680 F.2d 85 (9th Cir. 1982), affg. 76 T.C. 107 (1981); see also Lary v. Commissioner, T.C. Memo. 1987-169. This result is unaffected by the fact that such coins may still be used as legal

---

[6](...continued)
lumber.

tender at their face value. Lary v. Commissioner, supra. When the fair market value of legal tender exceeds its face value, such legal tender is property other than money. Cordner v. United States, 671 F.2d 367, 368 (9th Cir. 1982) (defining "property" for purposes of section 301(b)(1)(A)); see also Joslin v. United States, 666 F.2d 1306 (10th Cir. 1981).

The gold coins petitioner received from the sale of timber to C&D are commemorative coins issued by the U.S. Mint which are not currently circulating legal tender. Accordingly, those coins are "property" within the meaning of section 1001(b) and are to be valued at their fair market value for purposes of section 1001.

Petitioner conceded that the value of each 1-ounce gold coin he received had a fair market value of approximately $350. At trial, petitioner credibly testified that he did not sell any timber in 1992 but used money he had earned in prior years from mining or gold refining to support his family. Merfeld, the owner of the coin shop, testified that for 1992 he did not sell any gold coins to C&D. Moreover, Gary Schroeder, the timber manager at C&D, testified that no other customers required C&D to pay for timber in gold coins, and that the only business C&D did with the coin shop was with respect to the transactions engaged in for petitioner. There is no documentary evidence establishing that C&D lumber purchased gold coins from Merfeld in 1992. Thus, we hold that with respect to 1992, petitioner did not have any

income from the sale of timber to C&D.  In 1993, however, petitioner received 47 gold coins in exchange for $17,811.45 worth of timber, and in 1994, petitioner received somewhere between four and five gold coins in exchange for $1,635 worth of timber.  Accordingly, we hold that petitioner had unreported income from the sale of timber for 1993 and 1994 of $17,811.45 and $1,635, respectively.

Issue 2.  Additions to Tax--Section 6651(a)(1)

Respondent determined that pursuant to section 6651(a)(1) petitioner was liable for late filing penalties of $1,018, $1,054, and $1,092 for 1992, 1993, and 1994, respectively. Petitioner did not address this issue.

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1); Webb v. Commissioner, T.C. Memo. 1993-521, affd. without published opinion 46 F.3d 1149 (9th Cir. 1995).  However, a taxpayer who is entitled to make a joint return and whose gross income, when combined with the gross income of his spouse, is, for the taxable year, less than the sum of twice the exemption amount plus the applicable standard deduction is generally exempt from filing a return.  Sec. 6012(a)(1)(A)(iv).  The filing exception under section 6012(a) generally does not apply to any individual who has net earnings

from self-employment of $400 or more for the taxable year.  Sec. 6017.

The taxpayer has the burden of proving that the addition is improper.  Rule 142(a); <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985).

Petitioner did not timely file Federal income tax returns for 1992, 1993, and 1994.  For 1992, petitioner earned no more than $140 per year from refining gold.  Accordingly, pursuant to section 6012(a), petitioner was not required to file a 1992 return and therefore is not subject to the section 6651(a)(1) addition to tax.  For 1993 and 1994, petitioner had self-employment earnings of $17,811.45 and $1,635, respectively, from the sale of timber, which exceed the $400 self-employment filing threshold under section 6017.  Accordingly, petitioner was required to file returns for those years.  We find that petitioner's failure to file for 1993 and 1994 was due to willful neglect and not reasonable cause.  Accordingly, for 1993 and 1994 we sustain respondent's determination with respect to this issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.